# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| 2TG LLC DBA THE TRUE GEM, *et al.*,[1] | § | |
| | § | CASE NO. 24-31334 (SGJ) |
| **DEBTOR** | § | |
| | § | (JOINTLY ADMINISTERED) |

## DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

## ARTICLE I
## INTRODUCTION

### Identity of the Debtors

2TG LLC dba The True Gem, et al. ("Debtors") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division on May 6, 2024. The Debtors manage and operate a jewelry retail and manufacturing business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtors, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtors are small businesses and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtors are permitted to reorganize their businesses for the benefit of their creditors, equity interest holders, and themselves. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After

---

[1] The Debtors in these Chapter 11 Sub V cases, along with the last four digits of each Debtor's federal tax identification number, are: 2TG LLC DBA THE TRUE GEM (2579); ARMSTRONG DIAMONDS (4145). The mailing address for the Debtors listed above is 2626 Cole Ave, Suite 800, Dallas, TX 75204.

1

such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

## **Explanation of the Confirmation Process**

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the Debtors vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtors from all their pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## **Voting Procedures**

**Unimpaired Class**.  Claimants in Class 1, 2 and 8 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Class**.  The Class 3, 4, 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code.  The Debtors is seeking the acceptance of the Plan by Claimants in Class 3, 4, 5, 6 and 7.  Each holder of an Allowed Claim in Class 3, 4, 5, 6 and 7 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com.  To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## **Summary of Plan**

Debtors' Plan of Reorganization provides for the continued operations of the Debtors to make payments to their creditors as set forth in this Plan.  Debtor seek to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to their creditors.

If the Debtors must seek confirmation of this Plan pursuant to §1191(b), then Debtors assert that cause exists to allow the Debtors to make all Plan payments as this will reduce administrative costs and provide assurance the Debtors are better able to monitor and maintain their cash flows.

### Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtors' creditors. Accordingly, the proposed Plan must provide the Debtors' creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtors' creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection

has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

      3.    **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

      4.    **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

      5.    **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

      6.    **"Case"** shall mean this Chapter 11 case.

      7.    **"Claim"** shall mean any right to payment from the Debtors as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

      8.    **"Claimant"** shall mean the holder of a Claim.

      9.    **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtors.

15. **"Debt"** shall mean any obligation of Debtors, alone, and any obligation of Debtors and any other Person, to any Entity.

16. **"Debtors"** shall mean 2TG LLC dba The True Gem (24-31334) and Armstrong Diamonds, LLC (24-31338).

17. **"Disbursing Agent"** shall mean the Reorganized Debtors or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18. **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

19. **"Entity"** shall include Person, estate trust, and governmental unit.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22. **"Petition Date"** shall mean the date on which the Debtors filed this proceeding, March 6, 2024.

23. **"Plan"** shall mean this Second Amended Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

5

24. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtors post-petition in the ordinary course of business.

25. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26. **"Reorganized Debtors"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29. **"Substantial Consummation"** shall occur upon Reorganized Debtors' commencement of payments to creditors as provided in this Plan.

30. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtors under this Plan.

31. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED BY THE DEBTORS OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTORS RECOMMEND THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTORS BELIEVE THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS' ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTORS URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtors

2TG LLC dba The True Gem and Armstrong Diamonds, LLC, started operations in June 2017. 2TG LLC operates a jewelry retail and manufacturing business selling socially responsible and eco-friendly jewelry including lab grown diamonds. 2TG LLC dba The True Gem, et al. elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtors filed this case on May 6, 2024. Debtors proposed to pay allowed unsecured based on the liquidation analysis and cash available. Debtors anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached

hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtors will continue in business. Based upon the projections, the Debtors believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtors are currently owned 33.30% by Andy Ramirez, 33.30% by Lynne Armstrong and 33.30% by Jordan Kasallis. Andy Ramirez is the managing member. Mr. Ramirez will remain managing member and retain his 33.30% ownership interest going forward.

### ARTICLE V
### ANALYSIS AND VALUATION OF PROPERTY

The Debtors manage and operate a jewelry retail and manufacturing business. 2TG LLC dba The True Gem, et al.'s assets include its accounts receivable and cash on hand, office furniture, equipment, machinery and inventory/raw materials. There are fully secured creditors as to this property based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtors' assets is attached hereto as Exhibit "B".

### ARTICLE VI
### MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors will continue operating the businesses. The Debtors' Plan will break the existing claims into six classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtors. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee (These claims are unimpaired)** These claims will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtors' case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims

are estimated as of the date of the filing of this Plan to not exceed the amount of $45,000.00. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimant** **Priority Tax Claims (This Claim is unimpaired)** Allowed Priority Claims are for estimated tax returns. This claim is secured and the amounts are based on estimated returns and will be paid on the effective date as to the actual amount owed. The following class contains Debtor's estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 Dallas County ("Dallas"** pertains to the allowed secured claim of **Dallas County** in the amount of **$10,478.88 (Claim No. 1-1; 24-31334).** The Dallas claim is for estimated taxes due for 2024 for personal property of the business and therefore will be paid as they come due in 2025.

In the event the Reorganized Debtors sell, convey or transfer any of the property which is the collateral of the Dallas claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Dallas to be applied to the Dallas tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Dallas prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to Dallas at any time. The Reorganized Debtors shall have sixty (60) days from the Effective Date to object to the Dallas's claim; otherwise, the Dallas claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Dallas shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Dallas in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Dallas to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make the payments as required in this Plan, Dallas shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtors' attorney advising of that default and providing the Reorganized Debtors with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, Dallas may, without further order of this Court or notice to the Reorganized Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, Dallas may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-2 Texas Comptroller of Public Accounts (Claim No. 8-1; 24-31334).** The estimated return for 2024 in the amount of $9,522.76 will be paid as it comes due if any amount is owed by the Debtors. Debtors have never had to pay a franchise tax in previous years and does not believe that one will be owed at the end of 2024.

9

**Class 3 Claimants** – **Pre-Petition Critical Vendor Payments (These claims are impaired)** The Court ordered on May 10, 2024 (Docket No. 30) for Debtors to pay certain pre-petition claims and designate critical vendors. The below critical vendors will continue to be paid in accordance with the order entered on May 10, 2024 (Docket No. 30) until paid in full:

1. DV Diamond Ltd
2. Frederick Goldman Inc
3. Hoover & Strong
4. Nivoda USA Ltd
5. DTN Inc.

**Class 4 Claimant** – **Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtors' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtors' secured pre-petition claim and the proposed treatment under the Plan:

**4-1 Hanmi Bank (Claim No. 5-1; 24-31334)** claim in the amount of $35,870.35 is secured by two 3D Printers. Debtors propose to pay the secured claim of Hanmi Bank's claim in the amount of $35,870.35 at 9.00% over 5 years in 60 equal monthly payments at $744.61 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**Class 5 Claimants** – **Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtors' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtors' secured pre-petition claim and the proposed treatment under the Plan:

**5-1 U.S. Small Business Administration aka SBA (No Claim Filed)** has a secured claim amount of $2,149,589.08. The SBA asserts it is fully secured by the Debtors business property pursuant to a UCC Lien that was recorded on May 12, 2022, which appears to put this claim in Lien Position 1. Debtor will pay the secured value of the claim of $1,089,095.23 over 60 equal monthly payments at 3.75% per annum at a monthly payment of $19,934.71. The remaining under secured portion of the SBA claim in the amount of $1,060,493.85 will be paid in Class 6 of this Plan.

**5-2 RBLX Funding (Claim No. 2-2; 24-31338)** had an alleged secured claim in the amount of $189,475.00. On September 24, 2024 (Docket No. 31; 24-31338), the Court entered an order disallowing this claim in its entirety. Therefore, this claimant will not receive payment under this Plan.

**5-3 Ocean Funding Corp. (Claim No. 6-1; 24-31334)** had an alleged secured claim in the amount of $185,348.40. The Court entered orders regarding this claim on September 20, 2024 (Docket No. 83) that this claim has been disallowed in its entirety. Therefore, this claimant will not receive any distribution in this Plan.

**Class 6 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 1st day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter on a quarterly basis at 0.00% per annum. Debtors will distribute $262,400 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, which includes the under-secured claim portions. The Debtors' General Allowed Unsecured Claimants will receive 14.74% of their allowed claims under this plan. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 14.74% of Total Claim |
|---|---|---|
| American Express (POC 4-1; 24-31334) | $80,343.98 | $11,844.77 |
| JAS Diamonds | $182,640.96 | $26,925.97 |
| Jordan Kasallis | $20,000.00 | $2,948.51 |
| JPMorgan Chase Bank (POC 3-1; 24-31334 | $39,759.58 | $5,861.58 |
| SBA | $1,060,493.85 | $156,344.05 |
| Shopify Capital Inc (POC 2-1; 24-31334) | $206,960.27 | $30,511.26 |
| Web Bank | $189,680.94 | $27,963.85 |
| Totals: | $1,779,879.58 | $262,400 |

**Class 7 Claimant – Admin Stub Rent Claim and Lease Cure Claims of Talon 2626 Cole, LLC (This claim is impaired)** Allowed Stub Rent and Lease Cure claim is is to be paid as follows:

**7-1 Talon 2626 Cole, LLC (Claim No. 7-1; 24-31334).** Debtors propose to pay the Admin Stub Rent Claim in the full amount of $36,219.84 at 0% interest during months 1-12 under the Plan. This claim will be paid in full before any payments are to be made to any unsecured creditor distributions occur. Further, Debtors propose to pay the pre-petition lease cure in the full amount of $146,077.58 in exchange for this Creditor continuing to permit the Debtors to occupy the leased space until the expiration of the lease term or default under this Plan. Payments for the lease cure shall be made in quarterly installment payments during the first three years of the plan with the final payment due before the lease expires. The first quarterly period shall commence on the Effective Date of the Plan payment and be paid at the end of each quarter. The required quarterly distribution for this portion for this portion of the claim shall be in the amount of $12,173.13 with annual totals of $48,692.53. In the event a payment date falls on a weekend or federal holiday, then the payment will be due on the next business day.

**Class 8 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtors. Class 8 Claimants are not impaired under the Plan.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

**Claims Bar Date.**

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was July 15, 2024. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

**Effect of Bar Date.**

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

**Standing.**

Following the Effective Date, the Debtors shall have standing to object to Claims.

**Objection Deadline.**

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtors may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtors may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

**Allowance of Claims.**

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.   **Effective Date and Notice**.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a noticethat informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence ofthe Effective Date; and (c) such other matters that Debtors deem appropriate.

B.   **Binding Effect of Plan**.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtors, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part,

or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

    C.    <u>Vesting of Assets</u>.

Upon the Effective Date, all assets of the Estate shall vest in the Debtors, except as otherwise provided in the Plan.

    D.    <u>Discharge</u>.

        1.    <u>Consensual Plan</u>

A consensual plan is one in which the Debtors has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtors will not be discharged from any debt imposed by this Plan.

        2.    <u>Non-consensual Plan</u>

A non-consensual plan is one in which the Debtors has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtors is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtors will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtors' Plan is confirmed under § 1191(b), Debtors will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtors will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

    E.    <u>Injunction Against Interference with Plan</u>.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtors.

F.        <u>Payments under the Plan</u>.

Regardless if the Debtors confirms the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, Debtors shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtors asserts that cause exists to allow the Debtors to make all Plan payments as this will reduce administrative costs and provide assurance the Debtors is better able to monitor and maintain its cash flows.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtors anticipate the continued operations of the business to fund the Plan.

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtors believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtors believe the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTORS'S PLAN

If the Debtors' Plan is not confirmed, the Debtors' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtors for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtors owes approximately $45,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $1,779,879.58 (includes claim objection creditor). The Debtors' assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving at least 14.74% of their claim if not more under the terms of the Plan.

A liquidation analysis is attached hereto as Exhibit "B".

# ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

# ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtors to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtors. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

The Debtors will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

# ARTICLE XV
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

# ARTICLE XVI
# RISKS TO CREDITORS UNDER THE DEBTORS'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtors that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

# ARTICLE XVII
# TAX CONSEQUENCES TO THE DEBTORS

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

# ARTICLE XVIII
# PENDING OR ANTICIPATED LITIGATION

The Debtors have evaluated potential claims which may be brought. The Debtors are unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: October 8, 2024

Respectfully submitted,

2TG LLC dba The True Gem, et al.

By: */s/Andy Ramirez*
Andy Ramirez, Managing Member